## Hancock, Administrator, *v.* Morgan and Another.

ADMINISTRATOR.—*Accord and Satisfaction.*—An administrator may receive in satisfaction of a note payable to him as administrator a claim, existing in account, of the maker against a third person; but the maker cannot be so released if there be no assignment of said claim to the administrator, and no agreement by said third person to pay the administrator, and said note be retained by the administrator.

APPEAL from the Washington Circuit Court.

Downey, J.—The appellant sued the appellees on a promissory note payable to the plaintiff as administrator, before a justice of the peace. The defense set up was that the defendants had transferred to the plaintiff, in satisfaction of the note on which the suit was brought, a claim, or debt, due to them from one Beacham Hancock, and that the plaintiff had received the same in satisfaction.

There was a trial before the justice of the peace by jury and a verdict and judgment for the defendants. The plaintiff then appealed to the circuit court, where there was another trial by jury, with a similar result.

A motion for a new trial was made, for the following reasons: first, the court erred in overruling the plaintiff's demurrer to the first paragraph of the defendants' answer (?); second, in admitting evidence of the plaintiff having received from the defendants a debt due by William B. Hancock to

John B. Morgan (defendant), in payment of the note sued on; third, in refusing instruction number one asked by the plaintiff; fourth, in instructing the jury that the plaintiff could recover the debt of William B. Hancock due John B. Morgan, in payment of the note sued on; fifth, the verdict is contrary to law; sixth, the verdict is contrary to the evidence.

This motion was overruled, and judgment was rendered on the verdict.

The plaintiff appeals to this court, and here assigns for error, first, overruling the demurrer to the first paragraph of the answer; second, admitting evidence of the receipt by the plaintiff from the defendants of the debt due from William B. Hancock to the defendant John B. Morgan, in payment of the note on which suit was brought; third, in refusing the first instruction asked; fourth, in giving instruction that the plaintiff could recover the debt due from William B. Hancock; fifth, in overruling the plaintiff's motion for a new trial.

With reference to the first alleged error, the record shows that a motion was made to strike out the first paragraph of the answer, and that it was overruled.    There is a demurrer copied in the transcript, but there does not appear to have been any action of the court on it.    Perhaps the demurrer is intended where the motion is mentioned.

The said paragraph of the answer is as follows: · "Said defendants *files* this as *his* set-off, and pleads payment of said demand in full, and that said John Hancock, administrator of said estate, did take a debt on Beacham Hancock for the payment of said note, and said Beacham Hancock was indebted ninety dollars and twenty-one cents, and said it was paid to his satisfaction, and that said defendants could have their note at any time; was done in the fall of 1866."

Regarding this as setting up a satisfaction of the note on which the suit was brought, by the transfer of the debt or claim due to the defendants from Hancock, we think it was good, in substance, though certainly, not a very good specimen either of pleading or of grammar.    But this is not

a question of much practical importance in the case. The suit having been commenced before a justice of the peace, there was no necessity to plead payment or accord and satisfaction.   2 G. & H. 585, sec. 34.

The next objection is, that the court should not have received the evidence of the agreement on the part of the plaintiff to take the claim on William B. Hancock in satisfaction of the note on which the suit was brought. The ground of this objection was that the administrator had no legal right or power to make such an agreement, and could only receive money in payment of the debt due to him. This is the same point involved in the refusal of the court to give the first instruction asked by the plaintiff, which was, that an administrator cannot receive anything except money in payment of a debt due the estate of which he is administrator.

The court admitted the evidence, and on this point instructed the jury as follows: "It is true, as a general rule, that an administrator, upon the sale of his intestate's property, is not authorized to receive anything but money; but he cannot commit a fraud on his debtor, he cannot be permitted to take, in payment of a note, a claim on a good man, and then wait with it till that man becomes insolvent, and then say, I had no right to make any such agreement; that might work a fraud, because the other man might have collected his money before his debtor became insolvent. If the administrator lost the money by waiting on Beacham, then he must make it good to the estate," &c.   There was an exception to the instruction given, and to the refusal to give that which was asked.

In *Chandler, Adm'r,* v. *Schoonover,* 14 Ind. 324, this court held, that, as a general rule, an administrator, upon a sale of the intestate's property, cannot receive in payment anything but money.

The court gave this to the jury as the law, but, by adding to it, authorized the jury to depart from the rule on the ground of supposed fraud on the part of the plaintiff.

We see no evidence of fraud in the testimony. The parties stopped short of carrying their arrangement to the point where it would have become legally sufficient and binding. This was a matter as well known to one as to the other party. John Hancock had no right of action against William B. Hancock, and, consequently, an action against him would have resulted in nothing. It was not a fraud to fail to sue when there was no cause of action. Had there been an assignment of the claim on William B. Hancock, there might have been a different case presented.

The motion for new trial on account of the insufficiency of the evidence has induced us to examine the evidence, which is all in the record, with some degree of care.

The plaintiff gave in evidence the note on which the suit was brought, and then rested.

The defendants then gave the following evidence:

*John B. Morgan*, one of the defendants, testified that the plaintiff came to him, and demanded payment of the note sued on, and said that the note was due on that day; that defendant said he could not pay it until he had settled with William B. Hancock, that William B. Hancock owed the defendant for hogs. Plaintiff said it would suit him to take William B. Hancock for the debt and credit the note sued on for the amount, and he would take William B. Hancock for the debt. Defendant afterwards had a conversation with plaintiff, in which he said that he had seen William B. Hancock, and he had agreed to it, and that he had forgotten to bring the note sued on. About four months afterwards, had another conversation with the plaintiff, in which he said he had forgotten to bring the note; several times afterwards plaintiff promised to give him up the note. After plaintiff had heard that William B. Hancock was broken, he promised to give up the note when William B. Hancock and plaintiff got the thing fixed up. This trade was made in the fall, before William B. Hancock returned. Four days after William B. Hancock returned, plaintiff asked defendant to pay the note, and said that William B. Hancock was broken.

Defendant said, that was a horse of another color, and he would think about it. The next time he saw the plaintiff, he told him that he would not pay the note, that he had already paid it once. Afterwards plaintiff asked him for it, and said he knew he had taken William B. Hancock for it, but William B. Hancock had broken, and he, plaintiff, could not afford to lose it. William B. Hancock, at the time the note became due, owed defendant between three and four hundred dollars, and witness stated the particulars of such indebtedness. He made no written assignment or transfer to the plaintiff of the claim on William B. Hancock, and plaintiff did not deliver to him the note which he held on the defendants. He offered to give to the plaintiff a written order on William B. Hancock, but he said it was not necessary. The note sued on was given for property purchased at the administrator's sale of the goods of the deceased; and William B. Hancock had not paid him the amount which was due to the witness from him as above.

*Amos Davis.* Heard a conversation between the plaintiff and the defendant, and plaintiff agreed to take William B. Hancock for the debt due by defendant to the plaintiff, and defendant agreed to it.

*William Morgan.* Heard a conversation between the plaintiff and the defendant; the plaintiff said he had agreed to take William B. Hancock for the debt in dispute, but that William B. Hancock had broke, and now he wanted defendant to pay him. Defendant said he had paid William B. Hancock to pay this debt, and that he would not do so.

*Samuel B. McCreary.* John B. Morgan paid him two hundred and fifty dollars, of William B. Hancock's money, in 1866.

The defendants then rested. The plaintiff then testified, in his own behalf, that the note in suit was given to him for property sold by him as administrator of Henry Rafferty, deceased. He called on the defendant to pay the note, and the defendant told him to call on William B. Hancock, and he would pay it. Plaintiff called on William B. Hancock, and

he refused to pay it, and said that he did owe Morgan a little on some hogs, but that Morgan owed him more on other debts, and that he could not pay it until he settled with Morgan; that he, witness, never promised to give the defendant up the note sued on; that he did not have the other conversations spoken of by defendants' witnesses; that in the spring after William B. Hancock broke, he demanded payment of the defendants, and the defendants promised twice to pay it. by the first of August.

*William B. Hancock.* Plaintiff came to him to pay a note: which he held on John B. Morgan, the defendant. He refused to pay, because he did not owe Morgan anything. There had been no settlement between him and Morgan at that time. Morgan owed him eighty dollars and twenty dollars, after giving him all the credits to which he was entitled. He had a note for eighty dollars on Morgan, which was due, and is not yet paid, and twenty dollars other indebtedness. He sent two hundred and fifty dollars by Morgan to McCreary.

. *Borden.* Testified that the defendant said on the trial of this cause before the justice of the peace, that he had said to plaintiff that he could pay the note, but not that he would pay it.

This was all the evidence in the cause.

It is at once apparent from the evidence in this case that if it was necessary to show the assent of William B. Hancock to the arrangement by which it is alleged the note in suit was satisfied, the defense was not made out. There is no evidence of that fact on the part of the defendants, except that Morgan testifies that the plaintiff told him, "that he had seen William B. Hancock, and that William B. Hancock had agreed to it."

In opposition to this, is the testimony of the plaintiff, and also of William B. Hancock, that William B. did not assent to it, but, on the contrary, denied any indebtedness on his part to Morgan. When it is remembered that the only evi--

dence on this point in behalf of the defendants was what was claimed by the defendant as having been admitted to him by the plaintiff, and that this kind of evidence is to be received with caution, and when it is seen that two witnesses testify to the contrary, we cannot doubt.

On this point the court charged the jury as follows: " If Beacham owed Morgan more than the amount of the note, and the administrator thought Beacham was better than Morgan, and chose to give up to Morgan the note, or agree to give it up to him, and take the account on Beacham in full satisfaction of the note, I think he had a right to do it, and that after Beacham *had agreed* to the transaction, the plaintiff could not then, after Beacham became insolvent, claim that the note was still in force against Morgan. By such an agreement, *assented to by Beacham*, then Beacham would become the debtor of his father to the amount of the note, and Morgan would have no more claim on Beacham, in consideration that the claim on Beacham was taken in payment of. the note if Morgan would give up his claim on Beacham. I therefore charge the jury that if they find by the proof that such a trade was made as I have just been stating, that amounts to a payment and satisfaction of the note."

As the court told the jury, it required the assent of all the parties to give effect to the arrangement, to make it valid as a novation. As William B. Hancock never consented, and therefore never became liable or bound to pay the amount to John Hancock, the plaintiff, and as there was no assignment of the claim to W. B. Hancock, there was no consideration for any agreement on the part of John Hancock to surrender up the note on which the action is brought. The transaction bears upon its very face evidence of incompleteness. The note in suit was still retained by the payee, and William B. Hancock never, in any way, became bound to the plaintiff. There was, therefore, no valid and binding novation, and no defense to the action. See *Morris* v. *Whitmore*, 27 Ind. 418; 2 Parsons Con. 187–8.

The judgment is reversed, with costs to the appellant, and the cause remanded, with directions to grant a new trial.

*T. L. Collins* and *J. S. Butler*, for appellant.

